**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**KIMBERLY M. GLANTON,**

     **Plaintiff,**

**vs.**                                **Case No.  1:11-CV-229-CAS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

     **Defendant.**

_____/

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is a Social Security case referred to the undersigned United States

Magistrate Judge upon consent of the parties and reference by Chief District Judge

M. Casey Rodgers.  Doc. 8.  *See* Fed. R. Civ. P. 73; 28 U.S.C. § 636(c).  After careful

consideration of the entire Record, the Court affirms the decision of the Commissioner.

**I.  Procedural History of the Case**

On or about October 21, 2008, Plaintiff, Kimberly M. Glanton, filed a Title II

application for a period of disability and Disability Insurance Benefits (DIB) and a Title

XVI application for Supplemental Security Income, alleging disability beginning April 1,

2006.  R. 10, 148-49.  (Citations to the Record shall be by the symbol "R." followed by a

page number that appears in the lower right corner.)  Plaintiff's date last insured, or the

date by which her disability must have commenced in order to receive benefits under

Title II, is December 31, 2011.  R. 12.

Plaintiff's applications were denied initially on February 19, 2009, and upon reconsideration on August 14, 2009. *Id.* at 10. On September 22, 2009, Plaintiff filed a request for hearing. *Id.* On February 15, 2011, Plaintiff appeared and testified at a hearing conducted by Administrative Law Judge (ALJ) Patrick F. McLaughlin in Gainesville, Florida. *Id.* Paul R. Dolan, an impartial vocational expert, testified during the hearing. *Id.* 25, 47-63, 133-34 (Resume). Plaintiff was represented by Michael A. Steinberg, an attorney. *Id.* at 25, 27, 66.

On April 8, 2011, the ALJ issued a Decision denying Plaintiff's applications for benefits. *Id.* at 20. On May 10, 2011, Plaintiff's counsel filed a document entitled "Reason for Disagreement." *Id.* at 146. On May 19, 2011, Plaintiff filed a request for review, *id.* at 142, 144, that was denied by the Appeals Council on August 25, 2011. *Id.* at 1-6.

On October 27, 2011, Plaintiff filed a complaint with the United States District Court seeking review of the ALJ's decision. Doc. 1. The parties filed memoranda of law, docs. 19 and 22, and those have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2011." R. 12.

2. Plaintiff has not engaged "in substantial gainful activity since April 1, 2006, the alleged onset date." *Id.*

3. Plaintiff has several "severe impairments: chronic headaches and neck pain." *Id.* (Plaintiff's "medically determinable mental impairment of depression, considered singly and in combination, does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." *Id.* Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the first three

functional areas [daily living, social functioning, and concentration, persistence or pace] and 'no' episodes of decomposition which have been of extended duration in the fourth area [episodes of the compensation]" and are "nonsevere." *Id.* at 13.)

4. Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 14.

5. Plaintiff "has the residual functional capacity [RFC] to perform medium work as defined in 20 CFR 404.1567(c) in 416.967(c) except the claimant is able to lift and or carry up to 50 pounds occasionally and up to 25 pounds more frequently. The claimant can sit for up to 6 hours and 8-hour workday. The claimant can stand and/or walk up to 6 hours in an 8-hour workday. The claimant can frequently climb. The claimant can occasionally balance, stoop, kneel, crouch, crawl. The claimant may have only occasional exposure to heights and hazards." *Id.*

6. Plaintiff "is capable of performing past relevant work as a Nurse's Assistant, Practical Nurse, and Correctional Officer. This work does not require the performance of work-related activities precluded by the claimant's [RFC]." *Id.* at 19.

7. Plaintiff was not under a disability at any time from April 1, 2006, the alleged onset date, through the date of the ALJ's Decision. *Id.*

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual

findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining

physicians; (3) subjective evidence of pain and disability as testified to by the claimant

and corroborated by [other observers, including family members], and (4) the claimant's

age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less than 12

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled

to DIB if he is under a disability prior to the expiration of his insured status.  *See*

42 U.S.C. § 423(a)(1)(A) and (d); Torres v. Sec'y of Health & Human Servs., 845 F.2d

1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818

F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or
equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.      Does the individual have any impairments which prevent past
relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits.  A positive finding at step three results in approval of the

application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  Consideration

is given to the assessment of the claimant's RFC and the claimant's past relevant work.

If the claimant can still do past relevant work, there will be a finding that the claimant is

not disabled.  If the claimant carries this burden, however, the burden shifts to the

Commissioner at step five to establish that despite the claimant's impairments, the

claimant is able to perform other work in the national economy in light of the claimant's

RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel,

190 F.3d 1224, 1229 (11th Cir. 1999); <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.  Evidence from the Administrative Hearing

### A.  Plaintiff's hearing testimony and medical evidence

Plaintiff accepts and incorporates the ALJ's statements of the Plaintiff's testimony and the documentary evidence "except as specifically alluded to, excepted, or expanded upon" in her Memorandum.  Doc. 19 at 4.

Plaintiff was born on March 19, 1969, and was almost 42 years old as of the hearing held on February 15, 2011, and 37 years old as of the alleged onset date of April 1, 2006.  R. 27.

The ALJ summarized Plaintiff's hearing testimony.

At hearing, the claimant testified that she currently lives with her 22-year-old daughter.  She indicated that she obtained a certified nurse's assistant license, but did not renew it.  She was also certified as a home health aide in the State of Florida.  She last worked in April 2006 at the Sheriff's Department.  She first started out in nursing at the jail and then went into security.

The claimant testified that she is not able to work due to severe headaches.  Due to high levels of noise and banging at the jail, she decided to quit.  The undersigned questioned the claimant who she was seeing for her headaches; the claimant responded that she does not see a doctor because she does not have the income.  She also admitted that she is not taking any prescription medications and is only taking over-the-counter medications.  She indicates that she experiences headaches on a daily basis.  She rated her pain a 19 on a pain scale of 1 to 25.  The claimant indicated that she suffered a fall, which prevents her from doing certain things.  She indicated that she cannot sit longer than 20 minutes or stand for longer than 25 minutes.  She says she can only walk for 10 minutes.  She also indicated that she can only lift up to 10 pounds.  With regard

to her mental complaints, she indicated that she is not seeking any mental health treatment.

In terms of her social abilities, the claimant indicates that she does not get along with people. She indicated that everything agitates her. In terms of her activities of daily living, the claimant indicated that she does not sit or stand for long periods, complete housework, or clean. She indicated that she cooks occasionally, does some laundry, and watches her grandchildren. She said she tries to exercise at least twice per week. She testified further that she sits in a dark room for hours at a time to help alleviate her headaches. She occasionally watches television, walks down the street and talks with her daughter.

R. 14-15.

Immediately thereafter, the ALJ concluded, using boilerplate language, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* at 15. (The ALJ concluded that Plaintiff had the RFC to perform medium work with some exceptions, *see supra* at 3. *Id.* at 14.)

Hereafter, the ALJ summarized the medical evidence and other evidence. *Id.* at 15-18. From approximately February 14, 2006, through November 26, 2007, Plaintiff sought treatment with the Dixie County Health Department for primary care. *Id.* at 15, 224-50. (Plaintiff was also examined at the Dixie County Health Department on March 19, 2008, complaining of "tender knots to breasts." *Id.* at 228.) There was some treatment for reported headaches and patient notes do not indicate that her headaches were associated with photophobia or sensitivity to light. *See, e.g., id.* at 15, 240-2/14/06, patient note: "Ø photophobia Ø blurry vision; pain top of head"; 238-3/29/06-frequency and intensity of headaches. On May 16, 2006, Plaintiff was prescribed

Percocet and Fioricet. *Id.* at 239. On February 23, 2007, Plaintiff reported her

headaches were about the same, maybe a little better, and she requested refills for

Fioricet and Xanax. *Id.* at 232. Patient notes of November 26, 2007, and March 19,

2008, are difficult to read, although Plaintiff appears to be taking Xanax 1mg prn and

Fioricet with Codeine prn as of March 19, 2008. *Id.* at 228, 230. *See id.* at 226

(Plaintiff's "medication profile" from March 29, 2006, through November 26, 2007).

On April 1, 2008, a mammogram and an ultrasound were negative. *Id.* at 244-

45, 253-54.

On December 8, 2008, Plaintiff was evaluated by Lance I. Chodosh, M.D., Family

Practice and Occupational Medicine, Gainesville, Florida, for a non-treating,

consultative examination. *Id.* at 15-16, 256-64. The ALJ summarized Dr. Chodosh's

examination notes.

> On December 8, 2008, the claimant was evaluated by Lance I. Chodosh, M.D.,
> for a consultative physical examination. The claimant indicated she was not able
> to work due to severe headaches, neck pain, and back pain. She characterized
> her headaches as debilitating and said her neck pain interferes with daily living.
> She explained her headaches began approximately seven years ago after
> domestic violence. She indicated her headaches start on the right side of the
> face and become more generalized. She said she had a surgical breast
> reduction and advised that it was a means of reducing tension in the neck and
> shoulder region, but it was not helpful. She said pain management and use of
> Topomax [sic] provided temporary relief, but had an adverse effect on her
> eyesight. The claimant indicated she was independent in activities of daily living.
> Pain and breathing problems limit her ability to walk and stand to five minutes.
> She said she cannot sit more than 20 minutes without having to change positions
> for comfort. She said she is able to stoop, and can squat slowly. She avoids
> lifting more than 10 pounds because of pain and dizziness. She does not have
> full strength in hands, but has adequate dexterity and generally normal hand
> function. Examination of the eyes revealed normal eye movements, with normal
> alignment. The funduscopic examination was normal and visual fields was
> normal to confrontation. Examination of the spine revealed no deformity,
> tenderness, or paraspinal muscular spasm. Straight leg raise was negative.
> Neurologically the cranial nerve functions were intact. The claimant's
> assessment of muscle strength was limited due to poor effort on the claimant's

part. However, grip strength was 4/5, but normal 5/5 otherwise. Manual dexterity was normal; she was able to write, remove, and replace the screw cap on a small bottle. Her coordination was good and there was no drift of outstretched arms. Her sensation was normal to soft touch and pin. The claimant's standing balance was normal, as was her gait and heel and toe walk. Dr. Chodosh diagnosed the claimant with chronic pain in the head and neck, without physical signs of impairment, chronic depression and other psychological issues, and vague visual complaints, without physical/functional impairment. After evaluation of the claimant, Dr. Chodosh opined that the claimant is able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally. (Exhibit 3F).

R. 15-16. (It was noted that Plaintiff declined to squat and rise. *Id.* at 259.)

Dr. Chodosh also noted that Plaintiff's "[j]oint ranges of motion are recorded separately, and all limitations are secondary to pain.*" *Id.* at 259. At the end of the report, Dr. Chodosh states: "* assessment activity could not be completed because claimant complained of pain, or requested that it be stopped." *Id.* at 260.

On February 4, 2009, Plaintiff participated in a psychological evaluation by Diana M. Benton, Psy.D., *id.* at 16-17, 266-69. The ALJ summarized the assessment.

On February 4, 2009, the claimant was evaluated by Diana M. Benton, Psy.D., for a psychological assessment. During her visit, the claimant interacted appropriately with office staff and Dr. Benton. Dr. Benton indicated the claimant was a poor historian in that she was often unable to answer (due to her emotional state). She was fully cooperative with this evaluation, which was believed to provide an accurate assessment of her present mental status. The claimant reported feeling [ ] worthlessness, fatigue, and low energy. The claimant reported that she is capable of performing all necessary self-care activities of daily living such as bathing, dressing, and eating, unassisted. She reported she is able to cook. However, she reported that she is not able to drive or clean (sweep, mop, vacuum, etc). She indicated a typical day entails getting up at about 10 and watching television. She has something light to eat and mostly lies back down, watch television or take a nap. She reported she "sometimes" spends time with her daughter. The claimant reported she never really socializes. She indicated she attends church once a week. She reported that she does not visit or talk on the phone to other people. The mental status examination revealed she was … well-groomed. Eye contact was intermittent. In general, she bowed her head and looked down or to her side. However, when asked to recall three objects at five minutes, she stared directly at Dr. Benton for several moments before responding. Likewise, she looked directly at Dr. Benton

for several moments when asked to perform serial sevens subtraction and several other times during interview.  There was no appearance of invalidism.  She rocked herself back and forth when she was trying to communicate about the trauma that occurred when she was 6 years old.  She continued rocking herself throughout the remainder of interview. She fidgeted with her hands and picked at her nails.  She occasionally chewed at her fingernails. No physical pain behaviors were noted.  There was no evidence of involuntary movements.  She spoke spontaneously at a normal rate and tone. However, especially during the first part of the interview but continuing throughout the interview, she often gave her answers by way of head nods.  There was no evidence of expressive or receptive difficulties with speech and she was able to engage appropriately in conversation.  Her thought processes were logical and goal oriented. There was no evidence of delusions or abnormal thought content.  There was no evidence of perceptual abnormalities.  Her mood and affect was depressed with frequent crying.  She was oriented to person, place, and time.  Her immediate memory was characterized by the repetition of five digits forward and four digits backward.  She was able to spell the word "world" backwards and her remote memory was intact.  She was able to perform serial sevens subtraction, mental additions of double digit numbers and simple multiplication. The claimant was concrete in her interpretations.  Both judgment and insight were gauged to be grossly normal.  The claimant was diagnosed with major depressive disorder and post-traumatic stress disorder.  Dr. Benton indicated that the claimant appeared moderately impairment [sic] by mental health symptoms, and that her prognosis to return to work was guarded. (Exhibit 4 F).

R. 16.  Dr. Benton "recommended that a qualified physician be enlisted to comment on her physical limitations and the impact that these may have on the prognosis for her return to work."  It was noted that "[s]he may benefit from psychotherapy." *Id.* at 269.

On February 9, 2009, an initial State Agency physical residual functional capacity (RFC) assessment was performed by Ernest L. Dealing, a single decision maker.  *Id.* at 17, 272-79.  It was determined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday; sit (with normal breaks) about 6 hours in an 8-hour workday; and rated as unlimited other than as shown for lift and/or carry, for ability to push and/or pull.  *Id.* at 273.  No postural, manipulative, visual, communicative, or environmental limitations are noted.  *Id.* at 274-76.  Plaintiff's symptoms as to severity or

duration of the symptoms and the severity of the symptoms and alleged effect on function are noted as partially credible. *Id.* at 277. No medical source statement regarding Plaintiff's physical capacities was in the file at the time of this assessment. *Id.* at 278.

On August 13, 2009, a second physical RFC assessment was performed by Nicholas Bancks, M.D., a non-treating medical consultant. *Id.* at 18, 326-33. "Based on the claimant's updated records and diagnostic findings, the medical consultant opined that the claimant was capable of medium work. (Exhibit 9F)." R. 18, 327. *See* 20 C.F.R §§ 404.1567(c), 416.967(c) ("Medium work involves lifting no more than 50 pounds and would frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." R. at 327 (occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds). Dr. Bancks noted Plaintiff had postural limitations such as *frequently* when climbing (ramp/stairs) and kneeling and *occasionally* when climbing (ladder/rope/scaffolds), balancing, stooping, crouching, and crawling, *id.* at 328, but no manipulative, visual, or communicative limitations. *Id.* at 329-30. Plaintiff had one environmental limitation--avoid concentrated exposure to hazards (machinery, heights, etc.). *Id.* at 330. Medical source statements regarding Plaintiff's physical capacities were in the reviewed file. *Id.* at 332. Dr. Bancks noted that there were medical source conclusions about Plaintiff's limitations or restrictions which are significantly different from his findings. *Id.* He explained: "ESO CE no limitations. Dont really disagree but making some allowance for documented pain. However at least this is felt feasible." *Id.*

On February 13, 2009, a psychiatric review technique was completed by Angeles Alvarez-Mullin, M.D.  *Id.* at 17, 280-93.  Plaintiff's medical impairments were rated as not severe and that "[t]here is no indication of severe mental impairment at this time." *Id.* at 280, 292.  Plaintiff had several medically determinable impairments such as "major depressive order, single episode, moderate, chronic" and post traumatic stress disorder (PTSD), *id.* at 283, 285, the same diagnoses determined by Dr. Benton, *id.* at 269.  Three functional limitations, such as restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, were rated as *mild* and no episodes of decomposition were noted. *Id.* at 290.  It appears the consultant considered the evaluations of Dr. Benton, patient notes from the Dixie County Health Department from February 14, 2006, through February 2007, and other information, including that Plaintiff lives with family, takes care of her personal hygiene, is able to prepare simple meals and do the laundry, does not drive, watches television, spends time with family, and goes to church.  *Id.* at 17, 292.

On July 16, 2009, a second psychiatric review technique was completed by Lee Reback, Psy.D., P.A.  *Id.* at 18, 312-25.  Plaintiff's medical impairments were rated as not severe.  *Id.* at 312.  Dr. Reback identified "major depression" as a medically determinable impairment and PTSD as a medically determinable impairment that does not precisely satisfy the diagnostic criteria.  *Id.* at 315, 317.  Dr. Reback identified the same functional limitations identified by Dr. Alvarez-Mullin.  *Id.* at 322.  In her consultant's notes, Dr. Reback, stated in part: "From a psychological perspective the claimant appears capable of daily and routine activities.  However she should be evaluated by medical due to going [sic] physical complaints."  *Id.* at 324.

From April 17, 2009, through June 26, 2009, Plaintiff was examined and treated

at Comprehensive Pain Management of North Florida, Gainesville, Florida, primarily by

Stephen Irwin, M.D., M.B.A., and others.  *Id.* at 17-18, 294-311.  William Guy, M.D.,

from Cross City, Florida, referred Plaintiff to Dr. Irwin.  *Id.*[2]  The ALJ summarized

Dr. Irwin's and others patient notes.

> [On April 17, 2009,] [t]he claimant began treatment with Comprehensive Pain Management of North Florida.  She was evaluated by William Guy, M.D. [sic], [*see* n. 2].  During her initial consultation the claimant indicated that she suffered with headaches that were associated with phonophobia, nausea, and photophobia.  She rated her worst pain level a 10 out of 10.  Physical examination indicated she had full range of motion of her neck.  She had some tenderness to palpation involving her trapezius muscles bilaterally.  The claimant had no cyanosis, clubbing, or edema.  She had full 5/5 muscle strength, full range of motion, and intact sensation to light touch in all extremities.  Straight leg raise was negative bilaterally.  Neurologically, the claimant's cranial nerves were grossly intact and she had 2+ patellar reflexes bilaterally.  Dr. Guy diagnosed the claimant with headaches, neck pain, and occipital neuralgia.  Dr. Guy refilled prescriptions for Topomax [sic] and Elavil.  He also prescribe [sic] Celebrex. (Exhibit 7F).  [*See* R. 294-97; 297-Elavil discontinued today (April 17, 2009)].[3]
>
> During an April [30,] 2009 follow-up examination with Dr. Guy, physical examination revealed tenderness over her greater occipital nerve.  There was no tenderness over the entire cervical spine.[4]  She also had positive Spurling's sign for the left C5-C6 nerve roots.  She was continued on Celebrex and Topomax [sic].  [R. 298].  A later June 5, 2009, appointment revealed tenderness over the left temporal artery and the entire cervical spine.  The claimant was then given a prescription for Fioricet and Percocet.  [R. 300-01].
>
> The claimant had a MRI of the cervical spine taken on May 6, 2009, revealing no abnormalities.  The vertebral heights were normal in height and alignment.  There was no wedge compression deformities or bone marrow edema to indicate compression fracture.  The discs were normal in height, contour, and signal.

---

[2]  The ALJ states that Plaintiff was evaluated by Dr. Guy at this facility, *id.* at 17-18.  Rather, it was Dr. Irwin and others.  Plaintiff mentions that Plaintiff was treated by Dr. Guy, doc. 19 at 9, but no specific treatment dates are stated.

[3]  On April 24, 2009, Plaintiff received a trigger point injection based on Plaintiff's report of severe pain and not responding to other less invasive treatments.  *Id.* at 309.

[4]  Patient notes indicate, however, that Plaintiff has "no tenderness over left temporal artery," but "[s]he has tenderness over entire cervical spine."  *Id.* at 298.

There was no focal disc protrusion or focal nerve compression. Nor was there any foraminal narrowing. A MRI of the brain was also taken and too was negative. (Exhibit 7F). [R. 303-04. On May 8, 2009, Celebrex was discontinued and Fioricet, Topamax, and Percocet were continued. Also, Plaintiff reported a daily pain score of 5 out of 10, with 10 being the worst pain; reported sleeping 4 hours a day; not working; and "has normal activity." *Id.* at 310.]

The claimant continued to follow-up with Dr. Guy. Dr. Guy continued the claimant on the medication regiment that include Fioricet, Percocet, and Topomax [sic]. No other treatment was recommended. (Exhibit 7F). [R. 300-01 (June 5, 2009), 305-06 (June 26, 2009)].[5]

R. 17.

After summarizing Plaintiff's testimony, the medical evidence, the examining

physician and psychologist reports, and the State Agency assessments, the ALJ

determined that "[i]n terms of the claimant's alleged headaches and generalized pain,

the objective medical evidence does not direct a finding of 'disabled.'" *Id.* at 18. The

ALJ considered the medical evidence and Plaintiff's subjective complaints and found

that Plaintiff was not credible regarding reported pain or limitations. *Id.* at 19. The ALJ

also found that his RFC assessment, *id.* at 14, is supported by the medical evidence,

the opinion of Dr. Chodosh, and the State Agency opinions. *Id.*

## B. Paul R. Dolan (Vocational Expert)

Mr. Dolan testified, without objection, as an impartial vocational expert. *Id.* at 9,

47-63. Mr. Dolan heard Ms. Glanton's testimony. *Id.* at 27-47. The ALJ asked

---

[5] On June 5, 2009, Dr. Irwin and a physician's assistant noted that Plaintiff would be scheduled for three or more trigger point injections and that the possible benefits and risks as well as alternatives were explained to Plaintiff. *Id.* at 300. As of June 26, 2009, and what appears to be Plaintiff's last visit with Dr. Irwin and others, the diagnosis is: neck pain, refractory to current treatment; headache; and muscle spasm. Dr. Irwin agreed with the treatment plan. *Id.* at 305. Plaintiff states in her memorandum that "[s]he continued to see the pain management doctors at the facility until December 2009," although no citation to the Record is provided. Doc. 19 at 10. Plaintiff testified that she last saw a doctor in December 2009 and does not "see a doctor" because she does not "have any income." R. 36.

Mr. Dolan four hypothetical questions. *Id.* at 52-53.

> Okay. I have -- I have four hypothetical (sic). The first hypothetical is 50 pounds occasionally, 25 pounds frequently, sits six, stands six, occasional stoop, occasional balance, occasional crouch, occasional crawl, occasional heights, occasional hazard. Frequent climb. Second hypothetical is the same as the first, with the addition of a routine repetitive task. Third hypothetical is 20 pounds occasionally, 10 pounds frequently, sits six, stands six. All the conditions are the same as the first hypothetical. Fourth hypothetical is hypothetical number three, with a routine repetitive task. Would the first hypothetical individual be able to gauge any of the past work described, or any part of the past work that was described as part of the claimants past work.

*Id.* at 52-53. Hypothetical one included consideration of occasional hazards. *Id.* at 53.

Although not a model of clarity, Mr. Dolan opined that based on the first hypothetical, and if the second hypothetical were limited to "repetitive tasks" (defined by the ALJ as semi-skilled), Plaintiff would be able to return to her prior work activity as a nurse assistant, correctional officer, and practical nurse as those jobs are defined at the medium exertional level. After finding Mr. Dolan's testimony consistent with the Dictionary of Occupational Titles, and accepting it, the ALJ ultimately determined that Plaintiff "can return to his [sic] past relevant work and therefore is not disabled." *Id.*; *see id.* 19, 51-52, 62-63.

The ALJ stated several times during the hearing that he took administrative notice of the fact that if a person cannot work eight hours a day, five days a week, on a sustained basis, as a result of a medically determinable physical or mental impairment, that such a person would meet the regulatory definition of disability. *Id.* at 44, 47, 56, 59. Based on this statement, Plaintiff claims the ALJ erred in finding that although she suffered from headaches and pain associated with other ailments, she could perform medium exertional activity. Doc. 19 at 7.

Plaintiff's counsel asked Mr. Dolan a series of questions, focusing mainly on the

ALJ's third hypothetical.  *Id.* at 56-61.

## V. Legal Analysis

### A.  Plaintiff's Credibility

Plaintiff argues the ALJ improperly discounted the credibility of Plaintiff's

subjective allegations on the basis of her limited medical treatment and medication

history for her allegedly debilitating headaches.  Doc. 19 at 6-10.  The ALJ, however,

properly discounted Plaintiff's credibility based on these and other factors.  Substantial

evidence supports the ALJ's credibility findings.

Pain is subjectively experienced by the claimant, but that does not mean that

only a mental health professional may express an opinion as to the effects of pain.  One

begins with the familiar way that subjective complaints of pain are to be evaluated:

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing:  (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1225.  *See* 20 C.F.R §§ 404.1529; 416.929 (explaining how

symptoms and pain are evaluated); 404.1545(e); 416.945(e) (regarding RFC, total

limiting effects).  This is guidance for the way the ALJ is to evaluate the claimant's

subjective pain testimony because it is the medical model, a template for a treating

physician's evaluation of the patient's experience of pain.

To analyze a claimant subjective complaints, the ALJ considers the entire record,

including the medical records; third-party and Plaintiff's statements; the claimant's daily

activities; the duration, frequency, intensity of pain or other subjective complaint; the

dosage, effectiveness, and side effects of medication; precipitating an aggravating factor; and functional restrictions. *Id.* The Eleventh Circuit has stated: "credibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.").

Plaintiff claimed disability due to severe, debilitating headaches and various pains. R. 14-19, 35-47. In particular, Plaintiff said she could not sit for more than 20 minutes, stand for more than 25 minutes, or walk for more than 10 minutes. *Id.* at 15, 38-40.[6] As a result, Plaintiff claims her impairments are so severe that she is disabled and unable to work.

The ALJ summarized Plaintiff's hearing testimony, *id.* at 14-15, and Plaintiff does not contend that the ALJ overlooked material testimony or medical evidence of record. *See* Doc. 19 at 4, 7-10. Plaintiff argues that the ALJ "did not provide adequate reasons for finding her not credible." Doc. 19 at 7.

The ALJ found Plaintiff had severe impairments that "could reasonably be expected to cause the alleged symptoms." The ALJ, however, did not find her "statements concerning the intensity, persistence and limiting effects of these symptoms" to be credible "to the extent they are inconsistent with the" ALJ's RFC assessment, which is supported by substantial evidence. R. 15. The ALJ supported these conclusions by making findings based upon a review of the entire record. *Id.* at 15-19.

---

[6] After reporting Plaintiff's limited ability to stand, sit, and walk, which is attributed by Plaintiff to an injury she sustained to her tailbone, the ALJ noted that Plaintiff had not received treatment "for the tailbone condition, thus no diagnoses, and no prescription for said ailment." *Id.* at 19.

The ALJ acknowledged Plaintiff's claim of headaches, but found that she "is not treating with any physician, takes not [sic] prescription meds, and never had a diagnosis of severe intractable headaches." R. 19; *see also* n.6.

"[F]ailure to seek medical assistance . . . contradicts [ ] subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits." Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (citation omitted). *See* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (explaining that in addition to objective medical evidence, ALJ may properly consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing); *see also* Carnley v. Astrue, No. 5:07cv155/RS/EMT, 2008 U.S. Dist. LEXIS 113930, at *27 (N.D. Fla. Aug. 21, 2008) (same).

At the time of the administrative hearing, Plaintiff was not seeing a physician or taking any prescription medication--only "over the counter" medication. *Id.* at 14-15, 36. *See* Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that ALJ properly discounted complaints of disabling pain where, among other factors, claimant only took aspirin, Motrin, Tylenol, and Darvocet).

The ALJ asked Plaintiff who was treating her for her headaches and pain, and Plaintiff responded: "Oh, I don't see a doctor. I don't have any income." According to Plaintiff, she was last examined and treated by a physician in December 2009. *Id.* at 36; *see* doc. 19 at 10. Plaintiff did not state, however, that she sought out and was unable to obtain medical treatment from, for example, the Dixie County Health Department or another health care provider notwithstanding her financial status. *See* Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999). There is no evidence that Plaintiff

was denied medical treatment due to lack of resources. *See* Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005).

Further, medical records showed very little medical treatment, and medical treatment was occasioned only by typical health complaints. *Id.* at 14-19, 226-54, 294-311. *See* Dyer, 395 F.3d at 1211; Wilson, 284 F.3d at 1226. Diagnostic imaging was normal. R. 17-18, 303-04, 310. Since her alleged onset date, although Plaintiff sometimes complained of headaches to medical providers including Dr. Irwin, the headaches were generally managed with treatment. *Id.* at 14-19, 226-54, 294-311. Considering the entire record, there is no medical evidence that her headaches cannot be managed with medication.

Also, no medical source had opined that Plaintiff's headaches and related pain are so limiting that she cannot work. *See* Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cit. 1996)). Substantial evidence supports the ALJ's findings that Plaintiff was treated in a routine and conservative manner. *See generally* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir 1996).

The ALJ set forth numerous inconsistencies in the record that undermined the credibility of Plaintiff's subjective complaints. The ALJ's credibility findings are supported by substantial evidence based on a review of the record as a whole. *See* Dyer, 395 F.3d at 1212.

## B. The ALJ's RFC determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it did not sufficiently account for work-related limitations caused by

Plaintiff's headaches. Doc. 19 at 10.[7] In making this argument, Plaintiff cites no

medical evidence in support of her allegation that her headaches prevented her from

performing any work. *Id.* Further, the ALJ properly discounted Plaintiff's subjective

complaints. Contrary to Plaintiff's argument, substantial evidence supports the ALJ's

RFC finding.[8]

The ALJ determined that Plaintiff retained the RFC to perform medium work.

R. 14. Plaintiff required little medical treatment, which was often for typical health

complaints; diagnostic imaging was normal; physical examinations were generally

normal or findings were minimal; and her headaches were managed with medication.

Also, the ALJ's RFC finding was consistent with the opinion of Dr. Chodosh, who

performed a consultative medical examination of Plaintiff and found she had normal

physical abilities, and the opinion of Dr. Bancks, a non-treating medical consultant. *Id.*

at 17-19, 257-64, 326-33.[9]

---

[7] The ALJ stated several times during the hearing that he took administrative notice of the fact that if a person cannot work eight hours a day, five days a week, on a sustained basis, as a result of a medically determinable physical or mental impairment, that such a person would meet the regulatory definition of disability. *Id.* at 44, 47, 56, 59. Based on this statement, Plaintiff claims the ALJ erred in finding that although she suffered from headaches and pain associated with other ailments, Plaintiff could still perform medium exertional activity. Doc. 19 at 7. As stated herein, the ALJ, however, rejected Plaintiff's claim that her headaches and associated pain caused her to be disabled.

[8] The RFC is what the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). It is an assessment based upon all relevant evidence including the claimant's description of limitations, observations of examining physicians or other persons, and medical records. *Id.* The responsibility for determining the claimant's RFC lies with the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c).

[9] The ALJ made the following findings regarding Dr. Chodosh: "Dr. Chodosh diagnosed the claimant with chronic pain in the head and neck, without physical signs of impairment, chronic depression and other psychological issues, and vague visual complaints, without physical/functional impairment. After evaluation of the claimant,

## VI. Conclusion

Considering the Record as a whole, the findings of the ALJ are based upon substantial evidence and the ALJ correctly applied the law.  Accordingly, the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits is **AFFIRMED.**  The Clerk is **DIRECTED** to enter judgment for the Defendant.

**DONE AND ORDERED** at Tallahassee, Florida, on November 5, 2012.


s/     Charles A. Stampelos_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

Dr. Chodosh opined that the claimant is able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally.  (Exhibit 3F)."  R. 16, 260.